# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIM McGUIGAN,                             )<br>                                           )<br>          Plaintiff,                      )<br>                                           )<br>     v.                                   )<br>                                           )<br> JOHN CONTE and JOSEPH EARLY,              )<br> District Attorney of Worcester,           )<br>                                           )<br>          Defendants.                     )<br>                                           ) | Civil Action No.<br>08-10163-FDS |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This is a civil action to recover a reward for information concerning the abduction and murder of a teenage girl. Jurisdiction is based on diversity of citizenship.

On June 27, 2000, a 16-year-old girl named Molly Bish disappeared in Warren, Massachusetts, while working alone as a lifeguard at a pond in rural Massachusetts. Nearly three years later, her remains were found in a wooded area some miles away. As of this writing, the murder has not been solved.

Plaintiff Tim McGuigan has filed suit to claim reward money offered in connection with the criminal investigation. At the time of Molly's disappearance, defendant John Conte was the District Attorney for Worcester County. According to the complaint, Conte "offered $100,000 as a reward for information 'leading to Molly Bish.'" McGuigan provided the state police with information that led to the discovery of Bish's remains, but he did not receive the reward.

McGuigan filed a one-count complaint for breach of contract on February 1, 2008. Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion will be granted in part and denied in part.

## I. Background

On a motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true.

Molly Bish was a 16-year-old girl from Warren, Massachusetts, who disappeared on June 27, 2000, while working alone as a lifeguard at Comins Pond in Warren. She was never seen or heard from again. Her disappearance, and presumed abduction and murder, triggered enormous publicity and an extensive search.

John Conte was the Worcester County District Attorney at the time.[1] The complaint alleges that in March 2001, Conte offered $100,000 as a reward for information "leading to Molly Bish." (Compl. ¶ 6). The complaint further alleges that the reward was funded by "[l]ocal citizens [who] had committed to putting up the money." (*Id.*). Attached to the complaint was a copy of a one-page flyer that was apparently distributed after Molly's disappearance. The top of the flyer reads as follows:

>MISSING
>$100,000 reward offered
>If you have any information about Molly:
>Call the Warren Police Department (413) 436-9595
>or the Polly Klaas Foundation (800) 587-4357

---

[1] The complaint actually refers to Conte only as "a resident of Worcester, Massachusetts," without identifying him as the District Attorney, although it also refers to "state police and other law enforcement persons attached to [his] office." (Compl. ¶¶ 4, 12).

The flyer provides a description and photographs of Molly, a sketch of a suspect, and information as to where she was last seen. It then states, in small type, "A service of the Polly Klaas Search Center Flyer - revised March 2001." Underneath that is the following: "A $100,000 reward is being offered for information leading to Molly."[2]

The flyer does not mention John Conte, the Worcester District Attorney's Office, or the Massachusetts State Police. The complaint simply refers to the flyer as Exhibit A, without any explanation or allegation as to how the document is connected, if at all, to the reward allegedly offered by Conte.

Tim McGuigan is a resident of Rhode Island. McGuigan learned from an acquaintance that he had found a blue bathing suit in an isolated wooded area. (Compl. ¶ 8). Based on the description of the bathing suit and its location, McGuigan believed that it might belong to Molly Bish. (Compl. ¶ 9). He went to the area where his acquaintance had spotted the bathing suit and determined that it fit the description of the one Molly was wearing on the day she disappeared. (Compl. ¶ 10).

On May 15, 2003, McGuigan called the Holden State Police Barracks and reported his finding. (Compl. ¶ 11). State police and other law enforcement personnel attached to Conte's office went to the scene where the bathing suit was spotted and conducted a search. On June 9, 2003, they discovered the remains of Molly Bish. (Compl. ¶ 12).

McGuigan then requested the reward money in return for the information he provided.

---

[2] As it is attached to the complaint, the flyer is deemed part of the complaint for purposes of this motion. *See* Fed. R. Civ. P. Rule 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Conte refused. District Attorney Joseph Early, the successor to Conte, has also refused to pay plaintiff the reward.[3]

Defendants have attached two affidavits in support of their motion for judgment on the pleadings: one from John Conte and an attorney's affidavit attaching various exhibits. In his affidavit, Conte states that he was the District Attorney of Worcester County at the time Molly Bish disappeared; that shortly after her disappearance, "several people in the community contacted me to pledge money for a reward for information leading to the arrest and conviction of the person responsible for Molly's abduction"; that it "was always [his] intent that the reward go to the person who gave information leading to the arrest and conviction of the person responsible for Molly's abduction"; and that "[e]ach and every reward poster that [he] authorized indicated that intent and used language to that effect." Defendants have attached copies of two flyers, two press releases, and a newspaper story reporting on a press conference, all of which indicate that the reward was for "information leading to the arrest and conviction" of the perpetrator.

## II.     Procedural Issues

Defendants have moved for judgment on the pleadings under Rule 12(c). The proper time to file such a motion is "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Defendants have not yet answered the complaint or moved to dismiss pursuant to Rule 12(b). The Court will therefore treat the motion as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See Seber v. Unger*, 881 F. Supp. 323, 325 n.2 (N.D. Ill. 1995) (describing the

---

[3] The complaint does not actually indicate that Early is the successor to Conte.

"common practice of treating the premature Rule 12(c) motion as a Rule 12(b)(6) motion" and citing cases).[4]

Although defendants have moved for judgment on the pleadings, the exhibits attached to their motion and the facts referenced in their supporting memorandum go well beyond the limited allegations of the complaint. Under Rule 12(d), courts may treat such motions as motions for summary judgment: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The decision whether to exclude the materials is within the court's discretion. *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

Under the circumstances, the Court declines to convert the motion into one for summary judgment. As set forth below, plaintiff's theory of the complaint is far from clear, and in any event plaintiff has had no opportunity to conduct discovery.[5]

Accordingly, the Court will apply the standard of review applicable to motions to dismiss for failure to state a claim under Rule 12(b)(6). In so doing, the Court accepts "the complaint's well-pleaded facts as true and indulg[es] all reasonable inferences in the plaintiff's favor." *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008). As the First Circuit has explained, "The Supreme Court

---

[4] As a practical matter, the conversion makes little difference; the standards under Rules 12(b)(6) and 12(c) are essentially identical. *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 163 (1st Cir. 2008) ("A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is treated much like a Rule 12(b)(6) motion to dismiss.").

[5] As discussed below, in order to lend some coherence to the analysis of the deficiencies in the complaint, the Court will nonetheless accept plaintiff's concession in his motion papers of an undisputed fact: that John Conte was the District Attorney for Worcester County at all relevant times from 2000 to 2003.

has recently altered the Rule 12(b)(6) standard in a manner which gives it more heft. In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967-69 (2007)).

## III. Analysis

The complaint sets forth one count, for breach of contract. As a general matter, a claim for reward monies is properly brought as a claim for breach of contract.[6]

A reward offer is a written manifestation of intention to be bound that creates a power of acceptance in anyone who renders the specified performance. *See* Restatement (Second) of Contracts § 29, illus. 1 ("A publishes an offer of reward to whoever will give him certain information. There is no indication that A intends to pay more than once. Any person learning of the offer has power to accept . . . ."); Restatement (Second) of Contracts, § 23 cmt. c ("Standing offers of rewards made by governmental bodies, however, may be regarded as intended to create a climate in which people do certain acts in the hope of earning unknown rewards."), & illus. 2; 1-3 Corbin on Contracts § 3.10.[7]

The complaint nonetheless suffers from multiple deficiencies, beginning with its description of the defendants. As noted, the complaint is sparse in the extreme. It does not

---

[6] The flyer attached to the complaint did not offer a reward for "information leading to the arrest and conviction of the person responsible for Molly's abduction," but for "information leading to Molly." Whether plaintiff has actually established that he is entitled to any reward is, of course, a question for another day.

[7] A reward may be recovered even where the claimant acted without knowledge of its existence. *See* Restatement (Second) of Contracts, § 23 illus. 3 ("A city ordinance provides that a standing reward of $ 1000 will be paid for information leading to the arrest and conviction of anyone guilty of arson within the city limits. A furnishes such information. A is entitled to the reward whether or not he knew of the reward or was motivated by hope of reward.").

identify Conte as the former District Attorney. It draws no connection between Conte and the attached flyer, which appears to have been created by the Polly Klaas Foundation. It identifies Early as the current District Attorney, but draws no connection between him and Conte, or him and the flyer.[8] It does not allege that Early offered any reward, or succeeded in interest to someone who offered a reward—only that he refused to pay it.

In other words, according to the four corners of the complaint, (1) Conte, an apparently private individual with no connection to the District Attorney's Office, offered a reward; (2) Early, the District Attorney, refused to pay the reward offered by Conte; and (3) a flyer was created that offered a reward that has no connection to either Conte or Early. The complaint therefore fails to state a claim of any kind upon which relief can be granted against Early, and states no claim against Conte acting in his official capacity as the District Attorney.

The Court notes, however, that plaintiff appears to concede in his opposition papers that Conte was the duly elected District Attorney at the relevant times. (Pl. Mem. at 2). In an effort to impose some modicum of common sense and efficiency in this case, the Court will briefly address some of the implications of that uncontested fact.

Defendants contend that the only real party in interest is Early in his official capacity as the current District Attorney. Accordingly, defendants contend that any individual capacity claims against both Conte and Early should be dismissed and that, because he no longer occupies the position of District Attorney, Conte should be dismissed from the suit entirely. To this, plaintiff responds that Early is being sued only in his official capacity as the current District Attorney, and

---

[8] As noted, the complaint cryptically notes that "state police and other law enforcement persons" were "attached to Conte's office." (Compl. ¶ 12).

not in his individual capacity. (Pl. Mem. at 2). Plaintiff further contends that Conte cannot be dismissed from the case until it is established that the offer of reward was made only in his official capacity. (*Id.*). This, in turn, is an implicit concession that the claim against Conte could *only* be brought against him in his individual capacity.

There are thus two possible claims: a claim against Early in his official capacity and a claim against Conte in his individual capacity.

### 1. The Claim Against Early in His Official Capacity

A lawsuit against a state official in his or her official capacity for money damages is, in substance, a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

> [O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against state officials in their official capacity therefore should be treated as suits against the State. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. . . .

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal citations and quotations omitted).

The suit against Early in his official capacity is therefore a suit against his employer, the Commonwealth of Massachusetts.[9] From this conclusion, at least two potential consequences follow.

#### a. Sovereign Immunity

First, the prosecution of this claim in federal court implicates the Commonwealth's

---

[9] The government of Worcester County was abolished by the Massachusetts legislature as of July 1, 1998. *See* Mass. Gen. Laws ch. 34B, § 1; *Regan v. United States*, 421 F. Supp. 2d 319, 321 (D. Mass. 2006) ("The Commonwealth of Massachusetts . . . has largely abolished county government and transferred county employees to state employ."). The District Attorney of Worcester County is therefore a state employee.

sovereign immunity under the Eleventh Amendment. "Although the Eleventh Amendment does not expressly bar suits in federal court against a state by its own citizens, it has consistently been read to preclude such actions in the absence of a waiver of the state's immunity to suit. Thus, this court is without jurisdiction to grant relief directly against the Commonwealth or its agencies unless the Commonwealth has consented to the filing of this action." *Massachusetts Hospital Ass'n v. Harris*, 500 F. Supp. 1270, 1277 (D. Mass. 1980) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Alabama v. Pugh*, 438 U.S. 781 (1978)).

Massachusetts has consented to be sued for breach of contract in at least some circumstances. *Minton Constr. Corp. v. Commonwealth*, 397 Mass. 879, 880 (1986) ("The Commonwealth long ago waived its sovereign immunity against actions brought to enforce obligations it assumed through contracts.").

That waiver does not, however, necessarily extend so far as to permit lawsuits against the Commonwealth in *federal* court. As the Supreme Court has explained:

> The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. . . . [A] State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued. Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (internal citations and quotations omitted) (superseded by statute on separate point); *see Mills v. Maine*, 118 F.3d 37, 50 (1st Cir. 1997); *WJM, Inc. v. Massachusetts Dep't of Pub. Welfare*, 840 F.2d 996, 1002 (1st Cir. 1988).

It appears that Massachusetts has not consented to suit in federal court for contract

claims. *See* Mass. Gen. Laws ch. 258, § 12 ( "Claims against the commonwealth, except as otherwise expressly provided in this chapter or by any general or special provision of law, may be enforced in the *superior court*.") (emphasis added); *Irwin v. Commissioner of Dep't of Youth Services*, 388 Mass. 810, 819 (1983) ("Applying our rules governing statutory waiver of governmental immunity, we find in the terms of G. L. c. 258, neither an express nor a necessarily implicit consent by the Commonwealth to suit in Federal courts.").[10]

Defendants have not, however, raised sovereign immunity as a defense in their motion for judgment on the pleadings.

> The Eleventh Amendment . . . does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (citations omitted). The Court will not, therefore, dismiss the complaint on that basis at this time.[11]

### b.    Statute of Limitations

Second, a breach of contract claim against the Commonwealth is subject to a three-year statute of limitations. *See* Mass. Gen. Laws ch. 260, § 3A; *Wong v. University of*

---

[10] There may also be an issue in this case arising out of the presentment requirement. *See* Mass. Gen. Laws ch. 258, § 4 ("A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section."); *see also Lodge v. District Attorney for Suffolk Dist.*, 21 Mass. App. Ct. 277, 283-84 ( 1985) (noting that "Presentment is a statutory condition precedent to recovery under c. 258" and designating "the Attorney General [as] the proper party for presentment of a claim against a district attorney under c. 258, § 4").

[11] Likewise, defendants have not raised, and the Court does not reach, the presentment issue. *See Lodge*, 21 Mass. App. Ct. at 284 ("A plaintiff must demonstrate that he has properly complied with the presentment requirement *when the defendant raises the issue in a timely manner.*") (emphasis added).

*Massachusetts*, 438 Mass. 29, 36 (2002).[12]  A cause of action for breach of contract normally accrues at the time of the breach.  *Campanella & Cardi Const. Co. v. Commonwealth*, 351 Mass. 184, 185 (1966).  Accordingly, plaintiff's cause of action against the Commonwealth apparently accrued when the District Attorney first refused to pay over the reward money.  The complaint does not specify exactly when that occurred; however, as the complaint was filed on February 1, 2008, the action presumably would be time-barred if that refusal came any time before February 1, 2005.

The complaint, however, fails to specify the date on which plaintiff was refused the reward by Conte.  Without this detail, the Court cannot determine whether there is an arguable basis for the claims.

### 2. The Claim Against Conte in His Individual Capacity

There remains the claim against Conte in his individual capacity.  There are two potential theories of recovery:  a claim against Conte based on his actions taken as District Attorney, and a claim against him based on actions taken solely as a private individual.

#### a. Claim Based on Actions Taken as District Attorney

It is clear that Conte cannot be personally liable for breach of contract if his actions concerning the reward were undertaken pursuant to his authority as District Attorney.  "The Supreme Judicial Court has held that 'one standing and acting in a public capacity, who makes a

---

[12] Although defendants have not raised the statute of limitations defense, the Court is empowered to consider the issue *sua sponte*.  *See Cardona Del Toro v. United States*, 1993 U.S. App. LEXIS 554, at *3-*4 (1st Cir. Jan. 19, 1993) ("[N]ot only is such a waiver [of a limitations defense] inapplicable to the power of the court to dismiss a claim on its own motion, but the mandate of Fed. R. Civ. P. 8(c) requiring affirmative defenses to be set forth in a responsive pleading does not apply to a motion to dismiss.") (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (holding that *sua sponte* dismissal of a complaint as frivolous was proper where the complaint "states a claim that appears to have expired under the applicable statute of limitations").

contract in behalf of the public, is not personally liable.'" *Hurton v. Puorro*, 2006 Mass. Super. LEXIS 66, at *8 (Mass. Super. Ct. Feb. 14, 2006) (quoting *Simonds v. Heard*, 40 Mass. 120, 124, 23 Pick. 120 (1839)). The question, therefore, is whether this offer of reward was made by someone "standing and acting in a public capacity" and "in behalf of the public."

A District Attorney in Massachusetts is the chief law enforcement officer in the county. *See, e.g.*, *District Attorney v. Flatley*, 419 Mass. 507, 509 n.3 (1995). The legislature has given the District Attorney the power to contract "in the name of the commonwealth" for any "expenses as may in his opinion be necessary for the proper conduct of his office in the investigation of or preparation and trial of criminal cases." Mass. Gen. Laws ch. 12, § 24.[13] Furthermore, it has authorized the Department of the Attorney General, subject to whose control District Attorneys act, to "accept any gifts or grants of money or property, whether real or personal, from any source, whether public or private . . . for the purpose of assisting the department in the discharge of its duties." Mass. Gen. Laws ch. 12, § 4A. Taken together, it would appear that the statutes authorize District Attorneys to offer rewards in criminal investigations and to augment those rewards with private donations. To the extent that a District Attorney was acting pursuant to such authority, he was therefore "standing and acting in a public

---

[13] In full, the statute reads as follows: "A district attorney, in the name of the commonwealth, may contract such bills for stationery, experts, travel outside of the commonwealth by witnesses required by the commonwealth in the prosecution of cases, for necessary expenses incurred by himself or by officers and others under his direction in going outside of the commonwealth for the purpose of searching for or bringing back for trial persons under indictment or against whom complaints are pending in his district, and for such other expenses as may in his opinion be necessary for the proper conduct of his office in the investigation of or preparation and trial of criminal cases; and all such bills shall be paid by the commonwealth upon a certificate by the district attorney that they were necessarily incurred in the proper performance of his duty." Mass. Gen. Laws ch. 12, § 24; *see also In re Rooney*, 298 Mass. 430, 433 (Mass. 1937) ("This statute gives to a district attorney the power to contract bills for services and expenses necessary to the proper performance of his duties but prescribes conditions which must exist before bills so contracted may be paid . . . .").

capacity" and "in behalf of the public," and cannot be held personally liable for the payment of the reward.

The complaint, however, does not even identify Conte as a former District Attorney. Accordingly, the Court cannot, at least at this stage, grant the motion to dismiss on the grounds that he was acting under his authority as a District Attorney when he made the reward offer.

### b.     Claim Based on Actions Taken in Private Capacity

District Attorneys may, of course, enter into private contracts that are unrelated to the performance of their duties; like any other citizens, they may enter into mortgage contracts, obtain car loans, purchase merchandise on credit, and so on.  It is at least conceivable that a person who happened to be a  public official could, in his spare time, privately offer a reward, either as an agent or as a principal, in a criminal case.  Under the circumstances here, that claim appears somewhat implausible.  In this procedural context, however, the Court cannot assume that plaintiff cannot prove such a set of facts, and accordingly the motion to dismiss will be denied.

## IV.    Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings, treated as a motion to dismiss for failure to state a claim upon which relief can be granted, is GRANTED in part and DENIED in part.

To the extent that the complaint asserts a claim against defendant Joseph Early, the motion to dismiss will be GRANTED unless plaintiff files an amended complaint within 21 days of the date of this order setting forth, in detail sufficient to satisfy the requirements of Fed. R. Civ. P. 8, the reasons plaintiff alleges that Early is responsible for paying the reward offered by

Conte.

To the extent that the complaint asserts a claim against defendant John Conte, the motion is DENIED.

**So Ordered.**

                                               /s/ F. Dennis Saylor
                                              F. Dennis Saylor IV
                                              United States District Judge

Dated: March 4, 2009